<pre>
1                  UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE
2

3    IN RE:                      .   Chapter 11
                                 .   Case No. 20-12067(BLS)
4    URSA OPERATING COMPANY,     .
     LLC, et al.,                .
5                                .
                                 .
6            Debtors.            .
                                 .
7    . . . . . . . . . . . . . . .
     THE ROYALTY CLAIMANTS,      .
8                                .
             Appellants,         .
9                                .
     v.                          .
10                               .
                                 .
11   URSA OPERATING COMPANY LLC, .   824 Market Street
                                 .   Wilmington, Delaware 19801
12           Appellee.           .   April 16, 2024
     . . . . . . . . . . . . . . .   10:37 a.m.
13
                   TRANSCRIPT OF ZOOM HEARING
14         BEFORE THE HONORABLE BRENDAN L. SHANNON
                 UNITED STATES BANKRUPTCY JUDGE
15
     APPEARANCES:
16
     For the Debtor:            Kenneth J. Enos, Esquire
17                              YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                Rodney Square
18                              1000 North King Street
                                Wilmington, Delaware 19801
19
     (APPEARANCES CONTINUED)
20

21   Electronically
     Recorded By:               ECRO
22
     Transcription Service:     Reliable
23                              1007 N. Orange Street
                                Wilmington, Delaware 19801
24                              Telephone: (302) 654-8080
                                E-Mail: gmatthews@reliable-co.com
25
     Proceedings recorded by electronic sound recording:
     transcript produced by transcription service.
</pre>

APPEARANCES: (CONTINUED)

For the Debtors:           Robert Velevis, Esquire
                           SIDLEY AUSTIN LLP
                           2021 McKinney Avenue
                           Dallas, Texas 75201

For Wells Fargo Bank:      Ana Alfonso, Esquire
                           WILLKIE, FARR & GALLAGHER LLP
                           787 Seventh Avenue
                           New York, New York 10019

For the Royalty
Claimants:                 George A. Barton, Esquire
                           BARTON & BURROWS, LLC
                           5201 Johnson Drive
                           Suite 110
                           Mission, Kansas 66205

                           - and -

                           Maria A. Sawczuk, Esquire
                           GOLDSTEIN & MCCLINTOCK LLLP
                           501 Silverside Road
                           Suite 65
                           Wilmington, Delaware 19809

1                                INDEX

2  MATTERS GOING FORWARD:                                    PAGE

3  Video Status Conference                                    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 10:37 a.m.)

2          THE COURT:  Good morning, all.  This is Judge

3 Shannon.  I understand from the court reporter that necessary

4 parties have joined.

5          This is a hearing in the matter of Ursa Operating

6 Company, which is Case Number 20-12067.  This is a status

7 conference that the Court has scheduled in connection with

8 the Third Circuit's opinion reversing the opinion of the

9 District Court and this Court, and sending then the mandate

10 back down to this Court for further proceedings.

11          It has been a while since I've seen all of these

12 parties.  It is good to see you and I hope that you're all

13 well.

14          The purpose that I have for today is really to

15 look for guidance and input from all of the parties with

16 respect to further steps.  I have, obviously, carefully read

17 the Third Circuit's opinion and direction to this Court about

18 further proceedings, and I wish to do so efficiently and

19 promptly now that we do have the mandate that has been issued

20 by the Circuit.

21          I'm going to hear from everybody today, but I

22 think I'd like to start with hearing from counsel for the

23 debtor, and I would also -- I think I'd like to be guided by

24 whether the parties have had any opportunity to discuss and

25 perhaps map out what our next steps should be in terms of

1   scheduling and mechanics.

2          I see Mr. Enos on the line.  Good morning and

3   welcome, sir.

4          Mr. Barton, it's been a while.  It's good to see

5   you as well, sir.

6          MR. BARTON:  Thank you, Your Honor.  Good morning.

7          THE COURT:  All right.  Can I hear from Mr. Enos

8   first, but, as I said, I'll hear from everybody.

9          MR. ENOS:  Thank you very much, Your Honor, and

10  good morning, Ken Enos, Young Conaway Stargatt & Taylor on

11  behalf of the debtor.

12         Your Honor, at the outset, yes, we actually did

13  have an opportunity to consult with counsel to the Royal

14  Claimants yesterday and, although we certainly appreciate

15  them taking the time to speak with us, I think it was time

16  worth spent -- excuse me, time well spent -- unfortunately,

17  but I suppose not surprisingly, we don't really see eye-to-

18  eye on where we should go from here.

19         Our view is -- and if you look back -- and,

20  believe me, this is not from my recollection, I had to read

21  the transcript -- if you look back at the transcript when

22  this issue was argued before the Court, we teed it up in a

23  way that there was three gating issues presented to you, and

24  you ruled in the debtors' favor with respect to one of those

25  issues.  And, you know, reading between the lines, I'm

1  assuming you did not reach the other two issues because you

2  didn't feel you needed to.

3  　　　　The Third Circuit -- it went up on appeal before

4  the Third Circuit, the Third Circuit obviously reversed and

5  ruled in favor of the Royalty Claimants with respect to the

6  first issue, and that being that, under Colorado law, Royalty

7  Claimants do have a real property interest in the unpaid

8  royalties and that Colorado's constructive trust doctrine

9  supports the imposition of a constructive trust.  And I'm

10 probably paraphrasing a bit there, but I believe that was the

11 gist of the ruling.

12 　　　　So that kind of leaves the two other issues that

13 we believe were argued before the Court ripe for

14 consideration, that being the effect of this Court's final

15 DIP order on the Royalty Claimants' property of

16 (indiscernible) argument; and then the second issue being

17 that whether the Royalty Claimants are able to identify and

18 trace the proceeds that they claim are in fact their

19 property.

20 　　　　Now, it's our view -- and I recognize that counsel

21 to the Royalty Claimants don't feel this way and, if I was in

22 their shoes, I probably would not either, but it's our view

23 that these two other gating issues should be addressed before

24 we do anything further, and I say that for a few reasons.

25 　　　　First off, as I pointed out, the issues were

1   already fully briefed, we believe the record is closed and,

2   subject to anything that the Court may want from the parties,

3   which we would be happy to provide, we don't think anything

4   further is really necessary for the Court to get up to speed

5   and rule on the issue.

6            The second point being is that the Court pointed

7   out at the hearing back in March -- and, again, this is from

8   reviewing the transcript -- as you pointed out, that hearing

9   was to kind of sort through some of the gated items to avoid

10  going into the weeds.

11           This is a liquidating estate with limited

12  resources.  So I would suggest that we only go into the weeds

13  if the other issues are not found to be in our favor.  They

14  have to be addressed anyway, so we view that it's important,

15  and it's most productive and efficient, to take those two

16  issues first before proceeding to kind of larger trial

17  preparations and the discovery and expense that would be

18  associated with those issues.

19           So, Your Honor, I think that is kind of the broad

20  view of where we think things stand and how we think the

21  Court should move forward.  I'm happy to answer any questions

22  the Court may have, and then I don't know if Mr. Velevis or

23  Ms. Alfonso believe I missed anything or have anything to

24  add, but I believe that's the debtors' perspective on where

25  we should be heading.

1          THE COURT:  No, I appreciate that.  I don't have

2    any questions and I'd like to hear from either Mr. Velevis or

3    Ms. Alfonso, or anyone else on the debtors' side of this

4    equation, so that Mr. Barton has an opportunity to respond to

5    all of the comments and points that are being made.  So I'm

6    happy to hear from counsel.

7          Mr. Velevis, I see you've turned your mike on.

8    Good morning, good to see you.

9          MR. VELEVIS:  Good to see you too, Your Honor.  I

10   turned my mike on only so that I could say I think that Mr.

11   Enos covered it from the debtors' perspective.  Ms. Alfonso

12   may have additional input from the DIP lender's perspective.

13          THE COURT:  Okay.  Thank you.

14          Ms. Alfonso, did you wish to be heard?

15          MS. ALFONSO:  Yes, thank you, Your Honor.  For the

16   record, Ana Alfonso, Willkie, Farr & Gallagher, counsel for

17   Wells Fargo, which was the administrative agent and a lender

18   under the DIP facility and the prepetition RBL facility.

19          Your Honor, if I could go back in time, I might

20   have asked the Court to make a specific ruling protecting the

21   integrity of the DIP order.  We did file papers in sort of a

22   me-too fashion many years ago, but we did not ask for a

23   ruling on that point, perhaps because I took it for granted

24   that I was so sure I was right about it that we wouldn't have

25   to go there and that maybe it would be easier for the parties

1 for Your Honor to focus on the ruling that Your Honor did

2 focus on.

3          That being said, we're now here, many years later,

4 and I'm still looking at the same DIP order that I believe is

5 crystal clear that this whole dispute is exactly the type of

6 thing that the admissions and the releases and the challenge

7 period deadline in the DIP order were designed to protect.

8 We haven't been driving the bus of this dispute, but the

9 lenders are paying for the gas and we're almost out of gas.

10          So what I would ask, respectfully, Your Honor, is

11 that if we could, before any ink gets spilt on discovery or

12 anything of that nature, that we have one more opportunity to

13 explain our position and walk the parties through the DIP

14 order and why we think that this dispute is time-barred.

15          THE COURT:  Okay.  Thank you, Ms. Alfonso.

16          Mr. Barton, good afternoon again, welcome.  It's

17 good to see you -- or good morning, I guess.  I'd like your

18 thoughts.

19          MR. BARTON:  Your Honor, I'm going to have Ms.

20 Sawczuk initially address --

21          THE COURT:  Sure.

22          MR. BARTON:  -- these issues.  Thank you.

23          THE COURT:  Okay.  Good morning, Ms. Sawczuk.

24 Good to see you, as always.

25          MS. SAWCZUK:  Good morning, Your Honor, Maria

1   Sawczuk on behalf of the Royalty Claimants, and here we are.

2        Your Honor, I was actually a little shocked

3   yesterday when we had our conversations that we weren't

4   seeing eye-to-eye -- I shouldn't say shocked because we

5   haven't seen eye-to-eye in this case, but I thought given the

6   Third Circuit's ruling that we would all kind of know where

7   we were going and it would just be a matter of putting a

8   scheduling order together.  The Third Circuit plainly sets

9   out what the next steps are.  It says the Royalty Claimants

10  are correct that, under Colorado law, they have a real

11  property interest in unpaid royalties, and Colorado's

12  constructive trust doctrine supports a position of a

13  constructive trust if a fact finder concludes that Ursa was

14  unjustly enriched at the Royalty Claimants' expense.

15       And then, further down, it says the Bankruptcy

16  Court reserved for a future hearing whether Ursa made any

17  improper deductions and, if so, the amount of those

18  deductions as related to each Royalty Claimant.  On remand,

19  additional fact-finding will be necessary to determine which,

20  if any, Royalty Claimants may be entitled to a constructive

21  trust remedy.

22       Your Honor, the court also goes on to say that the

23  -- to the extent that there is a finding that the Royalty

24  Claimants were not paid what they were supposed to be paid

25  and that the -- and that Ursa was unjustly enriched, these

1   assets, these dollars are not property of the estate and,

2   therefore, can't be -- can't be given as a DIP to the lender.

3          And, if you recall, Your Honor even said that when

4   we were asking for a stay or for a trust to be put into place

5   for these funds to be protected.  We kind of conceded that

6   Wells Fargo isn't going anywhere and that, to the extent that

7   these funds are not property of the estate, they would be

8   returned to the claimants.

9          So I think at this point we just need to start

10  looking at whether or not the -- that Ursa was unjustly

11  enriched and that's going to involve some discovery.  And I

12  know that the debtors don't want to do that, they have

13  resisted for, you know, nearly a decade now giving us any

14  documentation to prove our case, and much of it is in their

15  hands, although there will be some third party discovery

16  because -- and Mr. Barton can go into that, but I believe

17  that there's documents that other parties have that the

18  debtor may not have, but we need to just -- we need to find

19  out what the Royalty Claimants are owed because the

20  determination has been made that these funds, if we are owed

21  any, are not property of the estate and that a constructive

22  trust should be -- you know, should be imposed.

23         And as to the tracing issue, we don't even know

24  what we're tracing yet because we don't know if there's

25  monies there or not.  So we've got to get to -- we've got to

1   get to the point where we know how much is owed to these

2   claimants and what we're exactly fighting over.  And if that

3   involves a limited discovery just for that point, maybe we go

4   there first, but, quite frankly, I think the ball is ready to

5   roll now on each of these adversary actions, and we need to

6   get a scheduling order in place and start discovery.

7          And I'll give it to Mr. Barton to add anything

8   that I may have missed in that presentation because I know he

9   does have thoughts on this as well.

10         THE COURT:  Sure.  Mr. Barton?

11         MR. BARTON:  Thank you.  Let me give you sort of a

12  sense, Your Honor, of what the discovery is that we really

13  need.  There's an eight-year period of time that's involved

14  here, and a company called Antero Resources sold its oil and

15  gas interest in Garfield County to Ursa back in 2012.  And so

16  the period of time for the Royalty Claimants' underpayment

17  claims against Ursa extend through 2012 -- actually, December

18  of 2012 through December of 2020, when Ursa's sale to Terra

19  Energy Partners was accomplished.

20         And the way I believe Ursa kept track of its

21  royalty accounting was that initially Ursa was doing its own

22  royalty accounting and, you know, paying the royalties out to

23  the Royalty Claimants in this case, as well as the members of

24  the proposed class in the adversary proceedings as well, but

25  there came a point in time prior to Ursa's bankruptcy filing

1    where Ursa delegated that duty to a third party.  And so that

2    third party then has the royalty accounting data from

3    whenever their responsibilities commenced through the date of

4    the bankruptcy and beyond, as far as I know.

5         In addition to that, what happens in these cases,

6    Your Honor -- and I think it's true today as well -- is that

7    some of the products that come from the Royalty Claimants'

8    wells actually end up being transferred to a third party

9    processing company, in this case I think the processing

10   company was Enterprise, and then Enterprise ends up

11   processing the gas and transporting the valuable natural gas

12   liquid product to a fractionation facility, after which it's

13   fractionated and sold to the third party purchasers of those

14   natural gas liquid products.  This information is critically

15   important in connection with determining the amount of the

16   royalty underpayments that are owed to the Royalty Claimants

17   in this case.

18        So to give you a sense of it, there is going to be

19   some, you know, discovery on royalty accounting and it has to

20   come directly from Ursa, some that has to come from a third

21   party that Ursa hired to do its royalty accounting services,

22   and some from a third party that did the processing and

23   actually sold the natural gas liquid products.  That's data

24   that we need to get and, you know, I believe that we need to

25   have a scheduling order in place that allows us to get this

1  information efficiently.  We've done this in scores of other

2  cases, we've actually done it, you know, in the underlying

3  litigation against Antero, which was Ursa's predecessor, but

4  we don't have the data for the eight-year period from

5  December 2012 to December 2020, and that's what we need to

6  get.

7          And we certainly -- we also need to get data

8  related to the tracing of Ursa's assets.  We know -- and,

9  obviously, I have a copy of the sale transaction under which

10 Ursa sold its assets to TEP and was paid $60 million in

11 exchange for that, but at this point we don't know the

12 details, any of the details with respect to, you know, how

13 that money was later transferred and provided to Wells Fargo

14 and the other secured lenders.

15         As Your Honor will recall, we did seek a stay of

16 the distribution to Wells Fargo and the other secured lenders

17 back when this case was before Your Honor prior to our appeal

18 to the District Court and to the Third Circuit, but Your

19 Honor denied that request, but you did say, in pertinent

20 part, that if we were successful on appeal, we certainly

21 should have and would have the right to pursue, you know, the

22 secured lenders who hold the money, and maybe nearly all the

23 money, that's at issue with respect to the royalty owners'

24 claim -- Royalty Claimants' claims against Ursa.

25         And so all of that is the type of discovery that

1   we need to get, and related to other discovery related to the

2   tracing of the assets.

3          So, with respect to the DIP claim that was

4   referenced by opposing counsel, you know, the only thing I'm

5   going to say is this, that there was a procedural issue that

6   came up and that Ursa argued in the Third Circuit on its

7   petition for rehearing that the Court should modify its

8   opinion and allow Your Honor in the first instance to, you

9   know, make a ruling on the DIP issue.  It didn't say it was a

10  preferred issue or it was a gatekeeping issue, nor did it say

11  that its comments in the original opinion, which I know Your

12  Honor has access to, were in any way wrong or erroneous in

13  which it rejected out of hand the whole DIP argument.

14         So, you know, our view is that there's no case law

15  anywhere that supports any of their arguments on this DIP

16  claim, and there's no basis whatsoever for that issue to have

17  some sort of priority gatekeeping function in this

18  litigation.  I think that's wrong and I'm not aware of any

19  authority that would permit that.

20         So I think we need to get a scheduling order in

21  this case.  We don't have a scheduling order, we never have.

22  There's no discovery that's been conducted in this case, and

23  we need to have the discovery move forward so that we can get

24  the data that we need in able to file dispositive motions

25  with respect to all -- or most -- I shouldn't say all -- most

1  of the Royalty Claimants' claims.

2          MR. ENOS:  Your Honor, may I respond?

3          THE COURT:  Mr. Enos, sure.

4          MR. ENOS:  Yes, just two points, Your Honor.

5  First off, on the DIP issue, as Mr. Barton pointed out, I

6  think it is noteworthy that in the -- after we filed the

7  petition for rehearing that language was struck out of the

8  opinion, therefore -- thereby reserving that issue for the

9  Court to interpret its own orders.  I think that's important

10 to note.

11         And I recognize what Mr. Barton said about the

12 Court, you know, had in the original opinion about that DIP

13 order.  However, first off, that was not in the final opinion

14 and, second, I think there's a very large difference between

15 the Court dismissing certain arguments made by the appellants

16 in a brief versus the Court considering your interpretation

17 and review and ruling on the impact of that DIP order.  So I

18 think those are two very important points.

19         I'm not going to get into the substance of Mr.

20 Barton's arguments.  Obviously, as a bankruptcy practitioner,

21 we very much disagree with his interpretation of the

22 importance of the language in that DIP order, but I'll leave

23 it at that.

24         And then the second point, Your Honor, regarding

25 the tracing issue, I will point out -- and Ms. Sawczuk, I'm

1   sure she -- she is correct, she quoted directly from the

2   beginning of the opinion, but I think she left out and she

3   didn't mention kind of one of the final paragraphs of the

4   opinion where the Third Circuit noted that, although a

5   constructive trust is an available remedy under Colorado law,

6   none of this absolves the Royalty Claimants of their

7   responsibility of identifying the funds that they assert to

8   be equitably theirs.  And also following the petition for

9   rehearing the court included a footnote that made it clear

10  that further discovery is up to the discretion of Your Honor.

11          So I think the Third Circuit's ruling is very much

12  -- it's a puzzle piece that fits very well with kind of what

13  we are proposing the Court to do at this time with respect to

14  kind of handling these issues in a succession, as opposed to

15  all at once.

16          Thank you.

17          THE COURT:  Thank you, Mr. Enos.

18          Ms. Alfonso, did you want the last word?

19          MS. ALFONSO:  One last word, Your Honor.  I won't

20  respond to everything point-by-point.  We've all argued about

21  this for years, so I think it's pretty what everyone's

22  positions are, but just on the tracing point.  Mr. Barton

23  mentioned a need to trace proceeds of collateral to Wells,

24  that's not really the tracing issue here.  The question here

25  is tracing the underpayments to the estate; that is the issue

1   of tracing that has to be established for purposes of

2   confirming the existence of a RES to which a constructive

3   trust can attach and, for all the reasons we've previously

4   stated and would be happy to explain again, there is no such

5   RES.

6           Thank you, Your Honor.

7           THE COURT:  Okay.

8           MS. SAWCZUK:  Your Honor, may I just make one

9   comment --

10          THE COURT:  Sure.

11          MS. SAWCZUK:  -- with respect to what Mr. Enos

12  said.  The language that he quoted I omitted from the

13  footnote about we express no opinion on whether the

14  Bankruptcy Court must reopen discovery and we'll defer to its

15  sound discretion, that is accurate, that is in the footnote,

16  and I did not quote it because we never had discovery and the

17  Third Circuit doesn't know that.  They just know that an

18  adversary action came up to them and one would assume that

19  discovery would have occurred and then matters would have

20  been resolved.

21          So, you know, we haven't done discovery yet,

22  that's the whole point.  We need to now do discovery.  We

23  need to get to the point of finding out how much this money

24  is and then tracing it.  Yes, we do need to trace it, but we

25  can't do that until we know what we're tracing, and that's

1  what the discovery is going to do.

2          THE COURT:  Thank you.

3          All right, here's what we're going to do.  I

4  certainly understand the bid and the ask between the parties,

5  and I'm not surprised even a little that there's not

6  consensus on what the appropriate path forward is, but it was

7  helpful to me to get reacquainted with all of these issues.

8  I've obviously reviewed the file and the materials, as well

9  as the opinions.  I'm going to essentially take this matter

10 under advisement.  I expect to send a letter to counsel today

11 -- probably not today, probably tomorrow, after I've had an

12 opportunity to get my arms all the way around the competing

13 positions the parties have, and it will identify from my

14 point of view the path forward for this proceeding.

15         Again, I think I understand with perfect clarity

16 the different opinions -- or the different positions stated

17 by the parties and, obviously, I have my marching orders

18 coming down from the Circuit with respect to further

19 proceedings on remand.  So I don't think I have any questions

20 for the parties.  I want the opportunity, rather than just

21 off the cuff today, to provide direction.  So I want to

22 review the file and I, again, expect to provide the parties

23 with direction by letter by tomorrow.

24         Are there any questions?

25         COUNSEL:  No, Your Honor.

1            THE COURT:  All right, very good.

2            Well, again, it was a pleasure to see everybody

3    back and all well after a few years.  And the pandemic is

4    over, so that's good.  And I'll be in touch with you and I

5    expect to be in touch with the parties promptly to keep the

6    matter moving forward as directed by the Circuit.

7            Thanks again, Counsel.  Have a good day.

8            COUNSEL:  Thank you, Your Honor.

9        (Proceedings concluded at 11:00 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATION

2             I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9    /s/ Tracey J. Williams                    April 25, 2024

10   Tracey J. Williams, CET-914

11   Certified Court Transcriptionist

12   For Reliable

13

14

15

16

17

18

19

20

21

22

23

24

25